Kirstina Shepherd STROHSCHEIN;
Rick Strohschein, Her Husband;
and Beulah Leitch, Appellants,

v.

Michael CRAGER and Nadine
Howard, Appellees.

and

Michael Crager, Appellant/Cross–
Appellee,

v.

Nadine Howard; Rick Strohschein;
Beulah Leitch; And Kirstina Shep-
herd, Strohschein Appellees/Cross–Ap-
pellants.

Nos. 2005–CA–000687–MR,
2005–CA–000820–MR.

Court of Appeals of Kentucky.

Nov. 30, 2007.

Discretionary Review Denied by
Supreme Court Aug. 13, 2008.

Gordon B. Long, Salyersville, KY, for
Appellants/Cross–Appellees Kirstina Shep-

herd Strohschein, Rick Strohschein and Beulah Leitch.

Timothy A. Parker, Prestonsburg, KY, for Appellant/Cross–Appellee Michael Crager.

Gregory A. Isaac, Prestonsburg, KY, for Appellee/Cross–Appellee Nadine Howard.

Before THOMPSON AND VANMETER, JUDGES; GUIDUGLI,[1] SENIOR JUDGE.

*OPINION*

THOMPSON, Judge.

The appellants, Kirstina Shepherd Strohschein, her husband, Rick Strohschein, and Beulah Leitch, filed this action as a boundary dispute against Micheal Crager whom the appellants believed owned property adjoining their own. However, the complaint was later amended to include Nadine Howard after they discovered that Nadine claimed ownership to the subject property. Nadine filed an answer, counterclaim and cross-claim asserting ownership of the property located between that owned by the appellants and Crager and seeking to quiet title in herself.

This matter proceeded to a trial before the court on the issues of whether Nadine owned the property that is the subject of the complaint and the property boundary between the subject property and the appellants' property.

The property to which appellants and Nadine claim ownership is located on Fork Creek of Salt Lick in Floyd County and was once part of a larger tract owned by their grandfather, Tilden Shepherd. In 1964, Tilden conveyed to Kirk Shepherd, the appellants' father, a tract from the larger tract; at the time of his death, however, Tilden owned two tracts.

In 1994, Nadine filed a partition action to sell the remaining tracts. Kirk and his wife, Della, were named in the action. Subsequently, in August 1994, Kirk and Della conveyed their entire one third interest in Tilden's property to the appellants who were then made parties to the partition action.

Nadine purchased the subject property at the master commissioner's sale. The appellants now claim that the land sold by the master commissioner and deeded to Nadine was the same tract owned by Kirk and Della by virtue of a property description in the 1964 deed and which was conveyed to them in 1997.

The original dispute dates back to 1992 when Crager's predecessor in title had a disagreement over the erection of a fence which was later torn down. After the 1997 conveyance to appellants, they continued to challenge the location of Crager's property line and filed this action. During Nadine's discovery deposition, the appellants allegedly first discovered that Nadine claimed ownership.

As to the issue of the boundary line between the properties, the appellants introduced a survey of the property prepared by Eddie Childers. According to that survey, the appellants property is a 50.98 acre tract, 20.98 acres larger than the 30 acres described in the 1997 deed. If Childers' survey is correct, the appellants' property encompasses Crager's driveway and part of his yard and totally encompasses the property which Nadine claims. However, Childers admitted that he was not requested to establish the boundaries of Nadine's property. Because the appellants' deed was not a metes and

---

1. Senior Judge Daniel T. Guidugli sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

bounds description, he relied upon local residents to establish the monuments described in the deed.

Nadine and Crager both employed the same surveyor, Gregory Tackett, and both testified that his survey represents the correct boundaries of their respective properties. Tackett testified that after reviewing the property, the deed, and consultation with neighbors, he concluded that the appellants' tract was actually 34.24 acres. He testified that the "rocky part" described in Nadine's deed and a prior 1994 deed was very distinctive and established the boundary between the properties. In addition to the surveyor, the trial court heard testimony from the parties as well as from neighbors pertaining to the location of the boundary lines.

Nadine's position and one not contested by Crager, was that the "rocky point" described in both the master commissioner's deed and referred to in appellants' 1994 deed was the boundary line between the appellants' tract and the land which she purchased. The trial court agreed and found as follows:

> There was a considerable amount of testimony offered concerning the outer boundaries of the tract claimed by the Plaintiffs which would have enclosed the real property of the Defendant, Nadine Howard. Nonetheless, the only testimony offered concerning the location of Ms. Howard's boundary line was that of herself and her surveyor, Gregory A. Tackett. The court believes it to be significant that the deed from Kirk Shepherd and Della Shepherd to the Plaintiffs (Deed Book 379, Page 498) which was conveying Kirk Shepherd's undivided interest in the Tilden Shepherd property used the "rocky point" as a boundary line to the real property he later conveyed to the Plaintiffs. This "rocky point" was also utilized as a boundary line in the deed to the Defendant, Nadine Howard, (Deed Book 392, Page 747). The court also finds it significant that the deed of the Plaintiffs calls for a 30 acre tract while the Plaintiffs claim a 50.98 acre tract. On the other hand, the Defendants' survey shows the Plaintiffs' tract to be 34.24 acres in size. While the court is well aware of the inaccuracies of property descriptions which are not based upon surveyed descriptions, it appears that the use of the "rocky point" by Kirk Shepherd's deed (Deed Book 379, Page 498), as a boundary line between the Plaintiffs' property and the Tilden Shepherd estate property subsequently purchased by Nadine Howard results in the Plaintiffs owning a tract of land much closer in size to the 30 acre tract called for in their deed. Thus, since the "rocky point" is identified as a boundary line monument by a deed from the Plaintiffs' predecessor in title; is noted as a boundary line monument by the deed of Nadine Howard; was identified as a boundary line monument by Nadine Howard, and the Plaintiffs presented no maps or surveys to contradict Nadine Howard's assertion of the location of her boundary line, the court concludes that the evidence favors the location of the boundary line between the Plaintiffs and the Defendant, Nadine Howard, as being the "rocky point" and the line from there to the point where the three wires met. The court further concludes that the same boundary line is accurately set forth in the survey of Gregory A. Tackett and the same should be adopted by this court as the boundary line between the Plaintiffs and the Defendant, Nadine Howard.

The court held that the boundary line between Nadine's property and Crager's property was as set forth in the Tackett survey and as testified to by Crager and Nadine.

If the trial court is correct that Nadine is the legal title owner of the tract which lies between that owned by the appellants and Crager, it necessarily follows that there is no boundary between that owned by Crager and the appellants. Thus, our initial inquiry is whether Nadine owns the property which she claims.

■ Our standard of review is set forth in *Phillips v. Akers,* 103 S.W.3d 705, 709 (Ky.App.2002), where the court recited:

> With respect to property title issues, the appropriate standard of review is whether or not the trial court was clearly erroneous or abused its discretion, and the appellate court should not substitute its opinion for that of the trial court absent clear error. *Church and Mullins Corp. v. Bethlehem Minerals Co.,* Ky., 887 S.W.2d 321, 323 (1992), *cert. denied,* 514 U.S. 1110, 115 S.Ct. 1962, 131 L.Ed.2d 853 (1995). Furthermore, in an action tried without a jury, the factual findings of the trial court shall not be set aside unless they are clearly erroneous, that is not supported by substantial evidence. *Cole v. Gilvin,* Ky. App., 59 S.W.3d 468, 472 (2001); CR 52.01.

Substantial evidence is "evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Union Underwear Co., Inc. v. Scearce,* 896 S.W.2d 7, 9 (Ky.1995).

Both the appellants and their predecessors in title were parties to, and had notice of, the 1994 partition action and Kirstina actually attended and bid on the tract in dispute. She testified that no family member verbally or otherwise expressed their claim of ownership to the disputed property because, she stated, "we had a deed for it." The appellants further claim that it was impossible for them to have knowledge that the land auctioned was the subject property. However, the complaint clearly stated the source of title and placed them on notice that the partition action included is the same property they now claim.

■ We agree with the trial court that the failure of the appellants and their predecessor in title to assert their alleged ownership to the property now in dispute during the partition action or to file exceptions to the master commissioner's sale, precludes them from asserting title against Nadine. It is a maxim of the law that "he who is silent when he should have spoken, shall not be afterward heard to assert the claim on which, on the proper occasion, he failed to disclose." *Disney v. Creech,* 298 Ky. 758, 762, 184 S.W.2d 80, 82 (1944) (citations omitted). The similarity of the facts of this case and *Disney* are striking. In both cases, the party asserting title to property sold at a judicial sale was a party to the proceeding in which the real estate was sold, was present at the sale and knew that others present were bidding on the land. We agree with the trial court that the appellants' silence during the partition proceeding precludes them from asserting title superior to that claimed by Nadine.

■ We likewise find no clear error in the trial court's finding that the boundary line between Nadine's property and that owned by the appellants is established by the "rocky point" as described in the pertinent deeds. The trial court highlighted this fact and properly relied on the survey prepared by Gregory A. Tackett.

■ The court has total discretion to choose between the conflicting opinions of the surveyors if the opinion relied upon is not based on erroneous assumptions or fails to take into account established factors. *Croley v. Alsip,* 602 S.W.2d 418, 419 (Ky.1980). Although the parties intro-

duced conflicting surveys, there was no error in the trial court's decision to rely on the Tackett survey. Because the survey, combined with other evidence in the record, supports a finding that the "rocky point" established the boundary line between Nadine's and the appellants' property, we find no error.

Because we have affirmed the trial court's holdings as to the ownership of the respective properties and the corresponding boundary lines, there is nothing to resolve as to the boundary dispute between Crager and the appellants. Consequently, we decline to comment on whether the appellants timely asserted their claim against Crager. *See* KRS 413.060. However, Crager filed a cross-appeal alleging that the trial court erroneously denied him attorney fees and costs and dismissed his claims for malicious prosecution and intentional infliction of emotional distress which we now address.

■ Subsequent to the entry of the judgment in Nadine's and Crager's favor, Crager filed a counterclaim asserting claims against the appellants for malicious prosecution, intentional infliction of emotional distress, and claims for attorney fees and costs, including the cost of the Tackett survey. The trial court dismissed the counterclaim and denied Crager's request for attorney fees and costs except as provided for in CR 54.04.

■ The doctrine of malicious prosecution is one not favored in the law.

Public policy requires that all persons be able to freely resort to the courts for redress of a wrong, and the law should and does protect them when they commence a civil or criminal action in good faith and upon reasonable grounds. It is this reason that one must strictly comply with the prerequisites of maintaining an action for malicious prosecu-

tion. *Davis v. Brady,* 218 Ky. 384, 291 S.W. 412 (1927).

*Raine v. Drasin,* 621 S.W.2d 895, 899 (Ky. 1981). The action requires proof of the following elements: "(1) the institution or continuation of original judicial proceedings, either civil or criminal, or of administrative or disciplinary proceedings, (2) by, or at the instance, of the plaintiff, (3) the termination of such proceedings in defendant's favor, (4) malice in the institution of such proceeding, (5) want or lack of probable cause for the proceeding, and (6) the suffering of damage as a result of the proceeding." *Id.*

Although the appellants' belief that Crager owned the disputed property was determined by the court to be erroneous, there is no indication that they instituted the proceedings with malice. They were attempting to resolve a property boundary dispute that existed prior to Crager's purchase of the property and the Childers' survey, prepared prior to the filing of the action, indicated that the appellants owned the property. Under the circumstances, the trial court properly dismissed the counterclaim for malicious prosecution.

■ For the same reasons, Crager's claim for intentional infliction of emotional distress must fail. Based on the information available to the appellants, the filing of the action against Crager was not so outrageous that it offended the generally accepted societal standards of decency and morality. *Craft v. Rice,* 671 S.W.2d 247 (Ky.1984).

■ We find no error in the trial court's denial of attorney fees. Attorney fees are not permitted as costs in the absence of a statute or contract expressly providing for the payment of such fees. *Batson v. Clark,* 980 S.W.2d 566, 577 (Ky. App.1998). There is no statute or contract provision expressly providing for the pay-

ment of attorney fees in this case and, therefore, the court did not err in denying Crager reasonable attorney fees.

 The trial court also denied Crager recovery of the cost of the survey prepared by Tackett. In this Commonwealth, unless specifically authorized by statute, a fee paid by a party to an expert is not recoverable as a cost of the action. *Brookshire v. Lavigne*, 713 S.W.2d 481 (Ky.App. 1986). We can find no statute specifically authorizing the recovery of a party's surveyor's fee as a part of the costs of the litigation or otherwise. We find no error in the trial court's refusal to order the appellants to pay the cost of the Tackett survey.

The judgment and the order of the Floyd Circuit Court are affirmed.

ALL CONCUR.