RENDERED:  MAY 12, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0309-MR

RENA BILBRO                                                          APPELLANT

v.
APPEAL FROM FRANKLIN CIRCUIT COURT
HONORABLE THOMAS D. WINGATE, JUDGE
ACTION NO. 21-CI-00254

EDUCATION PROFESSIONAL
STANDARDS BOARD                                                      APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  EASTON, GOODWINE, AND TAYLOR, JUDGES.

GOODWINE, JUDGE:  Rena Bilbro ("Bilbro"), proceeding *pro se*, appeals from a

judgment of the Franklin Circuit Court affirming a decision of the Education

Professional Standards Board ("Board") permanently revoking her teaching

certificate.  Based on our review, finding no error, we affirm.

The Franklin Circuit Court summarized the relevant background and

procedural history of this case:

Petitioner possessed a teaching certificate issued by Respondent, the Education Professional Standards Board ("the EPSB"). Petitioner was initially indicted by the Ohio County Grand Jury for a myriad of charges related to the sexual abuse of her daughter. *See* Ohio Circuit Court Indictment No. 18-CR-00322. She pleaded guilty to the amended charge of Facilitation to Unlawful Transaction with a Minor, Second Degree. *Id.* Further, the Ohio County District Court entered a Domestic Violence Order against Petitioner on behalf [of] Petitioner's daughter in October 2019. Ohio District Court Domestic Violence Order 19-D-00152-001. As a result, the EPSB charged Petitioner with six (6) violations:

Count 1: [Petitioner] failed to exemplify behaviors which maintain the dignity and integrity of the profession in violation of 16 KAR[1] 1:020 Section 1(2)(c)1 when she entered a guilty plea to Facilitation of Unlawful Transaction with a Minor, Second Degree. This is also a violation of KRS[2] 161.120[](1)(m).

Count 2: [Petitioner] failed to exemplify behaviors which maintain the dignity and integrity of the profession in violation of 16 KAR 1:020 Section 1(3)(c)1 when she continued to allow her daughter to be subjected to sexual abuse. This is also a violation of KRS 161.120(1)(m).

Count 3: [Petitioner] violated KRS 161.120(1)(a)(2) when she entered a guilty plea to KRS 530.065, Facilitation to

---

[1] Kentucky Administrative Regulations.

[2] Kentucky Revised Statutes.

Unlawful Transaction with a Minor, Second Degree.

Count 4: [Petitioner] violated KRS 161.120(1)(d) when she demonstrated a willful or careless disregard for the health, welfare, or safety of others as evidenced by her guilty plea to KRS 530.065, Facilitation to Unlawful Transaction with a Minor, Second Degree.

Count 5: [Petitioner] violated KRS 161.120(1)(d) when she demonstrated a willful or careless disregard for the health, welfare, or safety of others when she refused to take action to prevent her daughter from being sexually abused.

Count 6: [Petitioner] violated KRS 161.120(1)(d) when she demonstrated a willful or careless disregard for the health, welfare, or safety of others when [she] made a threat against [her daughter] on social media that resulted in a Domestic and Interpersonal Violence Order to ensure [Petitioner] does not engage in further acts or threats of violence.

An administrative hearing was held on November 12, 2020. The Hearing Officer issued his Recommended Order on December 3, 2020, recommending permanent revocation of Petitioner's teaching certificate. All parties filed exceptions. The EPSB issued its Final Order on March 1, 2021, and made a few amendments to the Hearing Officer's recommended Findings of Fact, but fully adopted the Hearing Officer's recommended Conclusions of Law. The EPSB permanently revoked Petitioner's teaching certificate. Petitioner timely appealed to this Court.

Record ("R.") at 188-89.

On March 16, 2022, the circuit court entered an order affirming the Board's permanent revocation of Bilbro's teaching certificate. The court found that the Board's final order was supported by substantial evidence, and Bilbro's procedural due process rights were met. Additionally, the circuit court found Bilbro was not entitled to appointment of counsel, and its court was not the appropriate venue to challenge her criminal conviction. This appeal followed.

On appeal, Bilbro argues the circuit court erred in failing to understand she was: (1) wrongfully terminated under KRS 161.790(1)-(6); and (2) a victim of malicious prosecution.

"The basic scope of judicial review of an administrative action is concerned with the question of arbitrariness." *Kentucky Educ. Professional Standards Bd. v. Gambrel*, 104 S.W.3d 767, 771 (Ky. App. 2002) (citing *Kaelin v. City of Louisville*, 643 S.W.2d 590, 591 (Ky. 1982)). If the agency's factual findings are supported by substantial evidence in the record, "the findings will be upheld on appeal, even though there may be conflicting evidence." *Id.* (citing *Kentucky Commission on Human Rights v. Fraser*, 625 S.W.2d 852 (Ky. 1981)). As the finder of fact, the "administrative agency has great latitude in evaluating the evidence and judging the credibility of the witnesses." *Id.* (citing *Aubrey v. Office of the Attorney General*, 994 S.W.2d 516 (Ky. App. 1998)). "However, questions

-4-

of law are subject to *de novo* review." *Id.* (citing *Palmore v. Swiney*, 807 S.W.2d 950 (Ky. App. 1990)).

The central issue in the circuit court action was whether the Board's revocation of Bilbro's teaching certificate was supported by substantial evidence and applicable law. Bilbro does not challenge the circuit court's opinion and order affirming the Board's decision on appeal. Generally, "[f]ailure to raise an issue on appeal waives it[.]" *Personnel Bd. v. Heck*, 725 S.W.2d 13, 18 (Ky. App. 1986). However, "*pro se* litigants are sometimes held to less stringent standards than lawyers in drafting formal pleadings[.]" *Watkins v. Fannin*, 278 S.W.3d 637, 643 (Ky. App. 2009). Thus, to be thorough, we will review the Board's findings.

The Board's findings were supported by substantial evidence. On November 12, 2020, the Assistant Attorney General Hearing Officer, Michael Head, conducted a hearing and took testimony from Starla Lynch Coons, Bilbro's daughter, and victim; Billy Bilbro ("Billy"); Bilbro; Donna Howell, a former fellow teacher; Lindsey Bilbro Worthington, Coons' younger half-sister; and Jill Hunt, Bilbro's friend. Coons testified regarding the sexual abuse Billy committed against her. Coons also testified that Bilbro knew about the abuse and failed to take any action to stop it. Coons testified that she finally admitted years later that she was abused because she was concerned for her nieces. Throughout its findings, the Hearing Officer stated Coons' testimony was credible.

The Hearing Officer found the rebuttal testimony unconvincing. Billy and Bilbro both denied Coons' allegations, and their "testimony actually implies their guilt." R. at 62. The Hearing Officer found their testimony "not credible" and "unbelievable." *Id.* The Hearing Officer further found Billy's description of his encounter with Coons "appears to be an attempt to ascribe guilt to the victim." R. at 63.

The Hearing Officer also made findings regarding an incident that led Coons to obtain an order of protection against Bilbro. In October 2019, after Bilbro's criminal conviction became final, Coons was in a car accident. Coons "posted on her Facebook page a photo of the injuries to her face." *Id.* In response, Bilbro commented: "It looks like I didn't have to bust you in the mouth after all!! I believe that the airbag took care of it for me!! Karma is a B----!" *Id.* Though Bilbro "testified she was just kidding in this exchange," her testimony was not supported by any contemporaneous evidence from Coons' "Facebook page or otherwise, that she was kidding." *Id.* The Hearing Officer found: "The 'Karma' reference likely means she was implying Mrs. Coons was paying for Mr. and Mrs. Bilbro's criminal convictions. But this is not a reaction one expects from a mother." *Id.* The Hearing Officer further found: "Mrs. Bilbro's anger towards her daughter is more likely hiding the guilt she must feel, in Mrs. Coons' words, for allowing things to happen to her daughter that she should have protected her

from." R. at 64. The Hearing Officer further found: "At least in part due to [Bilbro's] Facebook comment, the Ohio County Kentucky Family Court entered an Order of Protection of October 22, 2019" in favor of Coons restraining Bilbro from contacting Coons and to remain at least 500 feet away from her. *Id.*

The Hearing Officer found a former fellow teacher, Donna Howell's testimony was unconvincing because "[i]t would not be surprising that Mrs. Bilbro would keep hidden from a fellow teacher the sordid events that had occurred in her home some ten years before they met." R. at 65.

The Hearing Officer also found Billy and Bilbro's child, Lindsey Bilbro Worthington's ("Worthington"), testimony unconvincing. Worthington was born in 1994. She testified she shared a bedroom with Coons, but she never witnessed Billy abusing Coons. However, "the abuse occurred at night when Mrs. Worthington was between the ages of three and five." *Id.* The Hearing Officer found: "It is not at all hard to believe that Ms. Worthington, at that young age, could have slept through [Billy's] abuse." *Id.*

Finally, the Hearing Officer found the testimony of Bilbro's friend of thirty years, Jill Hunt ("Hunt"), was also not compelling. Hunt's daughter and Coons attended school together through high school. Though Hunt "unsurprisingly testified that Mrs. Coons never reported to her the abuse [Billy] committed, Mrs. Hunt testified that 'something happened,' and she didn't want to call [Coons] a

liar." R. at 65. Hunt thought Coons was "confused," but the Hearing Officer found "her belief in Mrs. Coons' honesty [was] revealing." *Id.*

Based on the evidence presented, the Hearing Officer found based on Coons' testimony, "her mother witnessed and otherwise knew about [Billy] abusing her between the ages of 11 and 13 years old." *Id.* The Board adopted the Hearing Officer's findings with some modifications that are not relevant here.

The Board's findings of fact are supported by substantial evidence. The Hearing Officer heard testimony from Coons and rebuttal testimony from Bilbro, Billy, and other witnesses. The Board reviewed the Hearing Officer's findings and agreed Coons' testimony was the most credible. We will not disturb the Board's factual findings.

Based on its factual findings, the Hearing Officer entered conclusions of law, which the Board adopted. The Board proved by a preponderance of the evidence that Bilbro committed the six counts of violations. R. at 188-89. The Board also proved the propriety of the penalty imposed. Under KRS 161.120(1), the permissible disciplinary actions available to the Board are:

> revoke, suspend, or refuse to issue or renew; impose probationary or supervisory conditions upon; issue a written reprimand or admonishment; or any combination of those actions regarding any certificate issued under KRS 161.010 to 161.100, or any certificate or license issued under any previous law to superintendents, principals, teachers, substitute teachers, interns, supervisors, directors of pupil personnel, or other

administrative, supervisory, or instructional employees for the following reasons:

> (a) Being convicted of, or entering an "Alford" plea or plea of nolo contendere to, notwithstanding an order granting probation or suspending imposition of any sentence imposed following the conviction or entry of the plea, one (1) of the following:
>
> . . .
>
> > 2. A misdemeanor under KRS Chapter 218A, 508, 509, 510, 522, 525, 529, 530, or 531; . . .
>
> . . .
>
> (d) Demonstrating willful or careless disregard for the health, welfare, or safety of others;
>
> . . .
>
> (m) Violating the professional code of ethics for Kentucky school certified personnel established by the Education Professional Standards Board through the promulgation of administrative regulation;

KRS 161.120(1).

The Board found Bilbro violated KRS 161.120(1)(a)2. when she pled guilty to KRS 530.065. The Board found Bilbro violated KRS 161.120(1)(d) "when she demonstrated a willful or careless disregard for the health, welfare, or safety of others as evidenced by her guilty plea to KRS 530.065, Facilitation to Unlawful Transaction with a Minor, Second Degree." R. at 67. The Board found Bilbro violated this same subsection "when she refused to take action

-9-

to prevent her daughter from being sexually abused[,]" and when Bilbro "made a threat against Ms. Coons on social media that resulted in a Domestic and Interpersonal Violence Order to ensure [Bilbro] does not engage in further acts or threats of violence." *Id.* Finally, the Board found Bilbro violated KRS 161.120(1)(m) when she failed to uphold the professional code of ethics by pleading guilty to facilitation of unlawful transaction with a minor, second degree and continued to allow her daughter to be subjected to sexual abuse.

In determining the level of sanctions warranted, the Board considers the following factors:

1. The seriousness of the alleged violation;

2. Whether the alleged misconduct was premeditated or intentional;

3. Attempted concealment of alleged misconduct;

4. Prior misconduct;

5. Whether training is appropriate to prevent further violations;

6. Whether the sanction is necessary to deter future violations; and

7. Any other relevant circumstances or facts.

Procedures Relating to EPSB Action on an Educator's Certification, Section 2. VI. A.

First, the Board found that although the charges did not involve interactions with students, they are serious because they imply that Bilbro might fail to act if a similar situation involving a student arose. Second, the Board found the misconduct was premeditated and intentional because she failed to report her husband, threatened her daughter, and, more recently, denied responsibility and accused her daughter of lying. Third, the Board found multiple instances of abuse that Bilbro ignored and facilitated through her inaction. The Board found recent incidents of domestic abuse by Bilbro against her daughter. Fourth, the Board found Bilbro's violations were beyond the reach of training because her denial of responsibility continued, as evidenced by her testimony before the Hearing Officer. Fifth, the Board found permanent revocation was necessary to deter future violations, "at least to signal that the Board will not tolerate such behavior." R. at 69-70.

Based on our review of the record and applicable law, the Board acted within its statutory authority under KRS 161.120(1) in revoking Bilbro's teaching certificate. The Board followed its own procedures in determining that revocation was the appropriate sanction under the circumstances. Thus, we affirm the circuit court's order affirming the Board's final order.

Now we turn to the arguments raised in Bilbro's brief. First, Bilbro argues that she was wrongfully terminated by the McLean County Board of

Education under KRS 161.790(1)-(6), violating her right to due process. Appellant's Brief at 9. The McLean County Board of Education is not a party to this action, and the termination of her teaching contract is irrelevant to whether the Board's final order should be upheld.

Second, Bilbro argues she was a victim of malicious prosecution by the "Ohio County Sheriff's Department, Ohio County Circuit Court Prosecutor, Blake Chambers, Defense Lawyer, Kevin Croslin, McLean County School Board, and the Kentucky Education Professional Standards Board[.]" Appellant's Brief at 10. Aside from the Board, none of these persons or entities are parties to this case. Thus, allegations against them are irrelevant. Though Bilbro does not cite any law supporting her allegation of malicious prosecution by the Board, we will address it. The circuit court did not specifically address Bilbro's malicious prosecution claim. Rather, it said Bilbro's requested relief was not warranted. R. at 176.

To succeed in an action of malicious prosecution, Bilbro must prove all the following:

> (1) the institution or continuation of original judicial proceedings, either civil or criminal, or of administrative or disciplinary proceedings, (2) by, or at the instance, of the plaintiff, (3) the termination of such proceedings in defendant's favor, (4) malice in the institution of such proceeding, (5) want or lack of probable cause for the proceeding, and (6) the suffering of damage as a result of the proceeding.

*Strohschein v. Crager*, 258 S.W.3d 25, 30 (Ky. App. 2007) (citation omitted). Bilbro's argument fails because the Board's proceedings against her were not terminated in her favor. Bilbro's teaching certificate was revoked. Thus, the Board did not maliciously prosecute Bilbro.

For the foregoing reasons, we affirm the judgment of the Franklin Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Rena L. Bilbro, *pro se*
Beaver Dam, Kentucky

BRIEF FOR APPELLEE:

BreAnna Listermann
Frankfort, Kentucky